8

THOMAS G. MOUZES (SBN 099446)
MARK GORTON (SBN 099312)
**BOUTIN JONES INC.**
Attorneys at Law
555 Capitol Mall, Suite 1500
Sacramento, CA 95814
Phone: 916.321.4444
Fax: 916.441.7597
Email: tmouzes@boutinjones.com
mgorton@boutinjones.com

Attorneys for Creditor
American AgCredit, PCA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

(FRESNO DIVISION)

| | |
|---|---|
| In re<br><br>LJB FARMS, LLC,<br><br>Debtor. | **Case No. 2017-12998**<br><br>Chapter 12<br><br>**CONDITIONAL OPPOSITION OF AMERICAN AGCREDIT, PCA TO DEBTOR'S REQUEST TO USE CASH COLLATERAL**<br><br>Date: September 14, 2017<br>Time: 9:30 a.m.<br>Place: 2500 Tulare Street<br>Dept. B, Courtroom 13, Fifth Floor<br>Fresno, California<br>Judge: Honorable René Lastreto II |

American AgCredit, PCA ("American") submits this Conditional Opposition to Debtor LJB Farms, LLC's ("Debtor" or "LJB") Motion to Use Cash Collateral.

**INTRODUCTION**

By the pending motion Debtor not only seeks the use of American's and Community West Bank's ("CWB") cash collateral to harvest the 2017 almond crop and for 2017 farming practices, but also seeks to utilize the cash collateral to begin preparation for the 2018 crop year. Whether Debtor should be allowed to use cash collateral to commence farming operations for the 2018 crop year is premature. At this point, Debtor has not disclosed any proposed plan supported by accurate

projections, and as matters stand, creditors, such as American, have no idea how Debtor proposes to address its current financial circumstances. As a result, American files this conditional objection.

## STATEMENT OF FACTS

American has filed its proof of claim in the amount of $334,059.30, secured by both real and personal property of Debtor (Claim 9, filed 8/29/17). See Request for Judicial Notice, Exhibit 2. The proof of claim reflects the following:

On or about June 18, 2013, LJB executed the Master Loan and Membership Agreement to American. See Proof of Claim, Exhibit A.

On or about August 12, 2013, LJB executed a Security Agreement to American. See Proof of Claim, Exhibit B.

On or about March 7, 2016, LJB executed a Credit Agreement to evidence a loan in the original principal amount of $325,000. See Proof of Claim, Exhibit C.

On or about February 9, 2017, LJB executed documents including the Restructure Agreement, the Amendment To Credit Agreement, the Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing recorded in Madera County, and the Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing recorded in Merced County. See Proof of Claim, Exhibits D-G. The real properties owned by Debtor and subject to American's deeds of trusts are almond ranches.

The current remaining loan of American is secured by a first priority security interest in the personal property of LJB more fully described in the Security Agreement (Proof of Claim, Exhibit B) including, without limitation, all livestock, machinery, equipment, farm equipment, tools and fixtures, all goods, crops, harvested crops, farm products, inventory, parts, supplies, deposit accounts, capital stock issued under the Farm Credit Act of 1971, as amended, all rights to payment, payment of money or payment in kind, accounts, contract rights, patronage dividends, chattel paper, documents, instruments, general intangibles, warehouse receipts, and rights under any government or other loan or price support, general intangibles, all rights in and claims to any insurance policy, all rights to any statutory or common law lien or trust, all books, records, computer data and information related to the collateral and all proceeds and products of the thereof and all renewals,

replacements, substitutions, additions, accessions, rents, issues, royalties and profits. The loan of American is also secured by the junior liens in the real property more fully described in the attached record Deeds of Trust. Proof of Claim, Exhibits F-G.

The Master Loan Agreement and Security Agreement both require Debtor to hold American's collateral proceeds received for the benefit of American and pay/deliver those proceeds to American. See Request for Judicial Notice, Exhibit 2, Proof of Claim, Exhibit A, p. 10, paragraph 5.2; Exhibit B, p. 3, paragraph 3.3.

During August 2013, Debtor assigned all proceeds of sale of crops to American and American gave notice to The Almond Company of the assignment to American and The Almond Company executed the assignment. As a matter of information, for the 2015 and 2016 crop year, Debtor sold her almond crop to The Almond Company. The Assignment and Notice of Assignment executed by Debtor and The Almond Company required that all proceeds of Debtor's crops to be paid directly to American. Request for Judicial Notice, Exhibit 2, Proof of Claim, Exhibit H.

Prior to the filing of this bankruptcy, and as American's Proof of Claim reflects, Debtor restructured its loans with American under the procedure available to borrowers under the Farm Credit Act. At the time of the loan restructure, American's crop collateral proceeds for the 2015 crop year and the 2016 crop years had not been paid to American by The Almond Company. However, for the 2015 crop year crop, The Almond Company paid over the assignment to American, and instead paid the remaining 2015 crop proceeds directly to Debtor. Instead of Debtor delivering to American its crop collateral proceeds as required by the Security Agreement and other loan documents, Debtor used American's 2015 crop collateral proceeds for its own purposes to the prejudice of American's collateral interests.

During 2017, the dispute between American and The Almond Company was resolved and a compromised reached on the 2015 crop proceeds paid over the assignment and a settlement sum was paid to American by The Almond Company for the 2015 crop and applied to the then applicable loans. Further, during 2017, Debtor sold her 2016 crop to The Almond Company and the 2016 crop proceeds were paid to American by The Almond Company and applied to the then applicable loans.

For reasons which are not clear, Debtor in her Schedules listed a claim against American.

The basis for this claim by Debtor is disputed by American.

As of the filing of this case on August 3, 2017, the amount due, owing and unpaid to American under the loan was $334,059.30. This sum consists of principal of $298,832.06, accrued and unpaid interest of $2,824.81, legal fees of $27,642.43, and a restructure fee of $4,750.00. Interest, attorney fees and other costs are continuing to accrue thereof in accordance with the loan documents. A loan history as of August 18, 2017 and UCC-1s are attached to the Proof of Claim. Proof of Claim, Exhibits I and J.

At the time of the filing of this case, Debtor's loans with CWB secured by the almond ranches were in default and CWB commenced non-judicial foreclosure against the real property owned by Debtor. The bankruptcy filing occurred to halt the non-judicial foreclosure of CWB against the real property owned by Debtor upon which it conducts its farming operation.

## ARGUMENT AND AUTHORITIES

### 1. Adequate Protection.

Section 363(p)(1) of the Bankruptcy Code places the burden of proof on the issue of adequate protection on Debtor. Under section 363(c)(2) of the Bankruptcy Code, unless a debtor obtains the consent of a secured creditor to use its cash collateral, a secured creditor is entitled to adequate protection as a matter of right, not merely as a matter of discretion. 11 U.S.C. §§ 363, 1205; *Metro. Life Ins. Co. v. Sunnymead Shopping Ctr. Co (In re Sunnymead Shopping Ctr. Co.)*, 178 B.R. 809, 814 (9th Cir. B.A.P. 1995) ("A court's authorization for use of cash collateral must adequately protect the creditor's interest in that collateral"); *In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) (section 363 "is not permissive or discretionary – it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity"). The purpose of adequate protection is to ensure that the secured creditor receives the value for which it bargained, pre-petition, and to safeguard the secured creditor from the depreciation, deterioration or diminution in the value of its collateral during the bankruptcy case. By preserving the status quo, adequate protection ensures that the secured creditor's rights and interests are not being prejudiced. When a secured creditor is threatened with a decline in the value of its interest, the estate must make up for the decline in value either through cash payments, liens on other property or other methods

that provide the indubitable equivalent of the creditor's interest. See *U.S. Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 370-71 (1988).

In addition, though a creature of the Bankruptcy Code, the concept of "adequate protection" is rooted in the Fifth Amendment's prohibition against the taking of private property without just compensation. See Notes of Committee on the Judiciary, Senate Report No. 95-989, U.S. Code Cong. & Admin. News 5787 (1978). As the Supreme Court stated in *United States v. Security Industrial Bank*, "[t]he bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." 459 U.S. 70, 75 (1982). Security interests unquestionably are "property rights" protected by the Fifth Amendment. See, e.g., *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F. 2d 1017, 1019 (11th Cir. 1984) (*citing Wright v. Union Central Life Ins. Co.,* 311 U.S. 273 (1940)). Accordingly, the court cannot allow a lender's interests in its collateral to be diminished by the debtor's use while under the protection of the Bankruptcy Code's automatic stay. See *In re Magnus,* 50 B.R. 241, 243 (Bankr. D. N.D. 1985) (adequate protection "encompasses the basic constitutional requirement that a creditor's interest in property cannot be in any respect impaired or subjected to increased risk without assurance that the creditor will realize the benefit of its bargain" (internal citations omitted)).

Section 1205 sets forth adequate protection in a Chapter 12. Debtor does not propose, at this point, to make any cash payments to the secured creditors as a form adequate protection.

**2. Debtor's Proposed Cash Collateral Use and Adequate Protection.**

With regard to the 2017 crop, Debtor proposes to use cash collateral to conclude the 2017 crop harvest and conclude its 2017 farming practices. Provided American obtains a replacement lien in a form acceptable to it and on terms as discussed below, American does not oppose Debtor's request to use cash collateral to conclude the harvest of the 2017 crop and conclude its 2017 farming practices. Those expenses in the budget appear to occur before October 15, 2017. However, by the pending motion, Debtor also requests to use cash collateral for purposes of the 2018 crop year. Those expenses appear in the budget after October 15, 2017. While Debtor makes such a request, Debtor has yet to address its financial condition or its proposed plan to address the default of the senior loans secured by real property in favor of CWB.

Given the status of this case, and at this point, American believes it is premature for Debtor to include 2018 crop matters in any request for use of cash collateral. American has requested that Debtor revise its budget accordingly, but for a variety of reasons Debtor has declined the request.

The proposed budget, Exhibit D to the declaration of the principal of Debtor, reflects costs and expenses to October 15, 2017, which appear to be for crop harvest and care of the almond orchards. Thereafter, the costs and expenses appear to be related to the 2018 crop year. If any of the post October 15, 2017 costs are related to the 2017 harvest and care of the real property, then American requests further clarification from Debtor. However, post 2017 crop matters should be addressed by further motion, or a continued hearing on this motion, once the outcome of the 2017 crop production and prices are known and Debtor develops a more concrete plan to address its financial condition.

**3. Required Provisions.**

In addition to the provisions set forth in the motion, any use of cash collateral should be subject to terms and conditions including, without limitation, the following:

1. American who has a security interest(s) and lien(s) in Debtor's 2017 almond crop and the proceeds thereof, as well as other property of Debtor, shall have as adequate protection a replacement lien in the same type of personal property in which American held an interest as the petition date to the same nature, extent, validity and priority for the use of cash collateral. The replacement lien of American shall be valid, perfected, and enforceable and effective as of the petition date without any further action by Debtor and/or American and without the filing or recordation of any financing statement, security agreement or other instrument or document. The replacement lien shall be in addition to all pre-petition liens and security interests in favor of American.

2. CWB who has a security interest(s) and lien(s) in Debtor's 2017 almond crop and the proceeds thereof, as well as other property of Debtor, shall have as adequate protection a replacement lien in the same type of personal property in which CWB held an interest as the petition date to the same nature, extent, validity and priority for the use of cash collateral. The replacement lien of CWB shall be valid, perfected, and enforceable and effective as of the petition date without

any further action by Debtor and/or CWB and without the filing or recordation of any financing statement, security agreement or other instrument or document. The replacement lien shall be in addition to all pre-petition liens and security interests in favor of CWB.

3. The replacement liens shall secure an amount equal to any diminution in value of the respective collateral resulting from Debtor's use and expenditure of cash collateral. The respective replacement liens shall not extend to any causes of action or claims for relief of Debtor or arising under 11 U.S.C. sections 544, 545, 547, 548 and/or 549.

4. Debtor will not be entitled to recover any claim under Bankruptcy Code section 506(c) against any of American's and/or CWB's collateral in any form for any liabilities, costs and expenses arising out of and/or pertaining to Debtor's bankruptcy case incurred during the term for which cash collateral use is authorized.

5. With respect to Debtor's use of cash collateral, American and CWB each reserve the right to claim an administrative expense under section 503(b) and 507(a)(2) of the Bankruptcy Code with a super-priority status by reason of any failure to be adequately protected. Debtor reserves the right to oppose any such motion or claim by American or CWB.

6. The terms and conditions of this Court's Order will be binding on any trustee, including in the event the case is converted.

7. The rights and remedies of the parties concerning any matter including, without limitation, any further use of cash collateral, shall not be impaired, impacted and/or effected.

8. The Bankruptcy Court shall retain exclusive jurisdiction to resolve any dispute in connection with the rights and duties under a cash collateral order.

9. Debtor will not make any payments of cash collateral to any insider or affiliate of Debtor.

10. On or before September 20, 2017, and continuing by the 20th day of each and every month thereafter and so long as any cash collateral order is in effect, Debtor will deliver to American and CWB to their respective attorneys of record in this case: (i) copies of all reports, statements and/or accountings required to be delivered by Debtor to the United States Trustee as required under the Local Rules of Practice the Bankruptcy Court for the Eastern District of California, (ii) a

statement of income and expense and a balance sheet for the preceding month, and (iii) a comparison of the actual expenditures made by Debtor for the preceding month to those in the Budget.

11. Debtor's use of cash collateral is expressly limited to the categories in the Budget. No Budget line item will be available for the payment of any other line item or expense for any purpose whatsoever. The expenditures made by Debtor for each line item may not exceed the amounts set forth in the Budget by an amount in excess of 10% of any line item. Debtor will make no disbursements of cash collateral in cash.

12. Debtor will provide, make available and otherwise permit immediate access to such financial and operating information as representatives of American and/or CWB may reasonably request from time to time and which can reasonably be made available, including, without limitation, all books and records relating to the collateral and will allow inspections of the collateral.

Many of the above items are set forth in the Stipulation attached as Exhibit E to the Exhibits in support of the motion. American provides this conditional objection to provide Debtor and other creditors an opportunity to address these and other matters.

American reserves its right to include additional matters at the hearing. American requests that its attorney sign off on the form of any order.

Respectfully submitted,

DATED: September 7, 2017

BOUTIN JONES INC.

By: /s/ Thomas G. Mouzes
THOMAS G. MOUZES

Attorneys for Creditor, American AgCredit, PCA